UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELIZABETH FOX, MICHAEL WISNIEWSKI,
and OSWEGO VIEW, LLC, a Michigan limited
liability company,                                          C.A. No. _____

            Plaintiffs,

v.

THE CITY OF JACKSON, MICHIGAN, DANIEL MAHONEY,
Mayor and member of the City Council of the
City of Jackson, ARLENE ROBINSON, FREDDY DANCY,
ANGELITA V. GUNN, LAURA DWYER SCHLECTE,
KAREN BUNNELL, and WILL FORGAVE, members of the
City Council, JONATHAN GREENE, City Manager, PATRICK
BURTCH, former City Manager, MATTHEW M. HAGERTY, City Attorney,
MARK M. PORTERFIELD, staff attorney with the office of the
City Attorney and former acting City Attorney, BETHANY M. SMITH,
former City Attorney, BRIAN TAYLOR, Chief Building Official/Assistant
Director, JOHN O'CONNOR, Code Enforcement Officer,
DAVE BATTERSON, City Inspector, MARK FISH, Electrical
Inspector, JENNIFER L. MORRIS, former Director of
Neighborhood and Economic Operations, and ELMER J. HITT,
Director of Police and Fire Services, in their official
capacities, and MIKE KLIMMER, Detective, City of Jackson Police
Department, and SHANE LAPORTE, Assistant City Manager and
Director of Neighborhood Development and Economic Operations,
in their official and individual capacities,

            Defendants.

_____

Barry R. Powers  (P40589)
CRANBROOK LAW GROUP, P.C.
38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiffs

_____

## **COMPLAINT**

ELIZABETH FOX, MICHAEL WISNIEWSKI, and OSWEGO VIEW, LLC, a Michigan limited liability company, Plaintiffs, for their Complaint against THE CITY OF JACKSON, MICHIGAN, DANIEL MAHONEY, Mayor and member of the City Council of the City of Jackson, ARLENE ROBINSON, FREDDY DANCY, ANGELITA V. GUNN, LAURA DWYER SCHLECTE, KAREN BUNNELL, and WILL FORGAVE, members of the City Council, JONATHAN GREENE, City Manager, PATRICK BURTCH, former City Manager, MATTHEW M. HAGERTY, City Attorney, MARK M. PORTERFIELD, staff attorney with the office of the City Attorney and former acting City Attorney, BETHANY M. SMITH, former City Attorney, BRIAN TAYLOR, Chief Building Official/Assistant Director, JOHN O'CONNOR, Code Enforcement Officer, DAVE BATTERSON, City Inspector, MARK FISH, Electrical Inspector, JENNIFER L. MORRIS, former Director of Neighborhood and Economic Operations, and ELMER J. HITT, Director of Police and Fire Services, in their official capacities, and MIKE KLIMMER, Detective, City of Jackson Police Department, and SHANE LAPORTE, Assistant City Manager and Director of Neighborhood Development and Economic Operations, in their official and individual capacities, say:

<u>Statement of Jurisdiction and Venue</u>

1.      This action arises under the constitution and laws of the United States, specifically, the fourth amendment made applicable to the states under the fourteenth amendment, guaranteeing freedom from unreasonable searches and seizures, the fifth

2

amendment made applicable to the states under the fourteenth amendment, guaranteeing the right to due process, as well as 42 U.S.C. §1983 because Defendants, acting under color of state law, have subjected and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress both at law and in equity.

2.      Plaintiffs bring this action against officials of the government of the City of Jackson, Michigan in their official capacities for equitable relief and damages and against certain other officials in their official and individual capacities for equitable relief and damages as those officials knew or should have known their actions violated established legal rules and clearly established legal rights of Plaintiffs.

3.      This Court has original jurisdiction over all claims against all defendants arising under the constitution and laws of the United States under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367 as such are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      This action is a case of actual controversy within the jurisdiction of this Court  such that this Court may declare the rights and other legal relations of Plaintiffs with the force and effect of a final judgment under  28 U.S.C. § 2201(a) and such further

relief as may become necessary or proper under 28 U.S.C. § 2202.

5.     This Court has jurisdiction over all parties.

6.     Venue is proper in this Court under 28 U.S.C. § 1391.

<u>Averments of Fact Common to All Counts</u>

7.     This case is about the overarching aggression and attempts by the City of Jackson, Michigan, by adoption of an ordinance regulating residential real estate, and certain of its officials seeking unlawfully to enforce the ordinance with evil intent, under the guise of regulating residential properties by ordinance purporting to regulate "non-owner occupied" dwellings.

8.     Plaintiffs Fox and Wisniewski are natural persons residing within the City of Jackson, Michigan, in the judicial district of this Court, and Plaintiff Oswego View, LLC, is a Michigan limited liability company, of which Wisniewski is sole member, is a person, who are and were at times pertaining to this action, current or former owners, operators or managers of a parcels of residential real property, 1512 Lewis Street, Jackson, Michigan, situated within the City of Jackson, Michigan,

9.     Defendant City of Jackson, acting through its officers, agents, and representatives, has sought to regulate this residential real property as "non-owner occupied" under the subject inspection ordinance that is a principal subject of this action, particularly cited and described in detail below.

10.     Defendant the City of Jackson, Michigan, a corporate body politic, is an

incorporated municipality serving as the county seat of Jackson County, Michigan, deriving powers as a home rule city under provisions of the constitution of Michigan of 1963 and Michigan statutes appertaining thereto, such as M.C.L. § 117.1, *et seq*.

11.    Michigan law, specifically M.C.L. § 117.3(K) empowers the City to adopt ordinances regulating residential real property.

12.    The City has adopted a number of such ordinances and regulations, one of which is the Non-owner Occupied Residential Property Register Article of the Code of Ordinances of the City of Jackson, Michigan, Article I, Sections 14-1, *et seq*. ("Article" or "Ordinance").

13.    That Article, which the City adopted on October 23, 2012 (effective 30 days thereafter) purports to regulate residential dwellings in which persons other than or in addition to the owner reside for the avowed purpose of ensuring safe, secure, and sanitary living conditions. Sections 14-2 and 14-3.

14.    That Article requires owners to register such dwellings and pay a registration fee on penalty of eviction. Section 14-1(1). In such case, "the chief building official shall order the owner to take immediate legal action as required to vacate the premises, including eviction proceedings." *Id*.

15.    Every two years, by July 1st of every even numbered year, an owner subject to the registration requirement must apply for a property registration and pay the required application fees, outstanding inspection fees, and applicable late charges to the

municipal corporation. Secs. 14-6, 14-9(a). The registration fee is non-refundable. Sect. 14-6.

16.     Failure to apply for, register, or renew a property registration constitutes a violation of this Article and subjects the owner to late fees. Section 14-9(h). In addition to the chief building official, the chief fire official and the chief of police and their designated representatives are responsible for enforcing Article I.

17.     Those charged with enforcing Article I may inspect the dwellings as "necessary to enforce the provisions of this article" for the safeguarding of the "health, safety and welfare of the occupants of dwellings and of the general public." Sec. 14-42(1).

18.     Where the owner or occupant demands a warrant for inspection, the official "shall obtain a warrant from a court of competent jurisdiction." Sec. 14-42(5). The Article permits an *ex parte* warrantless inspection in an "emergency situation." *Id*. Code 1977, § 8.604; Ord. No. 93-22, § 1, 10-12-93; Ord. No. 2012-03, § 1, 2-21-12.  This is the only procedural safeguard or element of procedural due process offered to the citizens of Jackson under the Article, pre-deprivation or post-deprivation. The Article provides no means for pre-compliance *bi-parte* review in front of a neutral decisionmaker or post-deprivation appeal or review. The warrant process is perfunctory, and the Article mandates that the *ex parte* warrant be issued on administrative application regardless of whether the application or any affidavit in support of such

application meets any standards demonstrating any legitimate governmental purpose, whatsoever.

19.     On the degree of specificity required for the issuance of the warrant, the warrant section of this Article, varies significantly from the warrant section of  the Housing Law of Michigan. Sec. 127 of Michigan Public Act 167 of 1917 provides:

> (1) In a nonemergency situation where the owner or occupant demands a warrant for inspection of the premises, the enforcing agency shall obtain a warrant from a court of competent jurisdiction. The enforcing agency shall prepare the warrant, stating the address of the building to be inspected, the nature of the inspection, as defined in this or other applicable acts, and the reasons for the inspection. It shall be appropriate and sufficient to set forth the basis for inspection (e.g., complaint, area or recurrent violation basis) established in this section, in other applicable acts or in rules or regulations. The warrant shall also state that it is issued pursuant to this section, and that it is for the purposes set forth in this and other acts which require that inspection be conducted.
> (2) If the court finds that the warrant is in proper form and in accord with this section, it shall be issued forthwith.
> (3) In the event of an emergency no warrant shall be required.

MCL § 125.527.

20.     Under Article I of the Code of Ordinances, the owner must pay inspection fees; the failure to do so may result in the imposition of a lien on the subject real property and subjects the owner to a collection suit by the city. Sec. 14-43. Code 1977, § 8.605; Ord. No. 91-14, § 1, 4-23-91; Ord. No. 92-8, § 1, 5-19-92; Ord. No. 92-17,  § 1, 10-20-92; Ord. No. 93-22, § 3, 10-12-93; Ord. No. 98-23, § 1, 8-18-98; Ord. No. 2012-03, § 1, 2-21-12.  Such collection remedies granted to the City are not subject to any

challenge or review whatsoever.  The administrative applicant "shall obtain" the warrant, and the warrant "shall issue" upon such application.

21.    Nothing in Article I provides any type of mechanism for owners to challenge the inspection of their property, petition a neutral decisionmaker, and assert any other of their rights at any type of precompliance review before the inspection takes place.

22.    The single local magistrate of the City is charged with the obligation of issuing *ex parte* administrative warrants, which the Article makes mandatory. Thus, the warrants are systematically, habitually, perfunctorily, unconditionally, and as a matter of custom and policy, issued on some type of *ex parte* application only on the averment of City officials, whether supported by sworn testimony made on personal knowledge articulating a legal basis for issuance, mere hearsay, or less. The averments in support are routinely and automatically accepted, the applications granted, and the *ex parte* administrative warrants issued, all without challenge. Allegations given in support of the application, if any, are typically conclusory and lack the inclusion of a sworn statement of facts on personal knowledge establishing probable cause or any good cause for such inspections. Such are, thus, made with no showing or articulation of any facts establishing a valid governmental purpose, rationale, logical basis, or legal basis. Such shortcomings effectively render the warrants arbitrary and capricious at best, or motivated by evil purpose or recklessness at worst, which is not surprising given that

such issuance is mandated by legislative fiat. The issuance of the warrants is done on what is essentially a "rubber stamp" basis. The warrant process cannot function constitutionally, lawfully, or even effectively in this field and by such mechanism. Unless the magistrate scrutinizes a legislative or administrative assessment of broad factors not unique to the particular property and property owners and occupants at issue, he or she must be forced to issue such a "rubber stamp" warrant, which provides no protection at all to the property owner or occupant. Further, unlike the parallel state law, the Article sets forth no standards for the determination of what the warrant, application, or affidavit must provide or for its issuance.

23.     The constitution mandates that before a search or inspection is conducted, the government must give the owner a meaningful opportunity to contest an administrative search request by obtaining precompliance review in front of a neutral decisionmaker before the search or inspection occurs.

24.     Only after such a *bi-parte* hearing process may any magistrate properly and conclusively determine that an inspection is necessary for the safeguarding of the "health, safety and welfare of the occupants of dwellings and of the general public."

25.     To satisfy constitutional guarantees against unreasonable searches and of notice and an opportunity to be heard, the review scheme, at a minimum, must give the owner a meaningful chance to contest an administrative search request in front of a neutral party before the search occurs.

26.   The mechanism for the inspection process the Article authorizes lacks any provision or safeguard of precompliance review; it allows absolutely no right of precompliance review or *bi-parte* challenge before the search occurs.

27.   Consequently, the Article is facially invalid and is and has been invalid as applied as violative of constitutional guarantees of the right against unreasonable searches and seizures and of procedural due process comprised of notice and an opportunity to be heard reasonably calculated to inform citizens in advance so that they may enjoy the privilege of being present for, fully prepared for, and fully informed at, such proceeding, hearing, or administrative review.

28.   The City is liable to Plaintiffs as it has, through its Board of Councilors promulgated a facially unconstitutional Article and has conducted itself in the enforcement of such Article so as to run afoul of these guarantees under the fourth and fifth amendments, the right to privacy and to be secure in one's home, and the right to due process. Further, the City has employed customs, practices, and policies that further derogate such rights of its citizens. All inspections of residential real property, related charges and fees are made and collected pursuant to and solely under the power the Article grants to the City and its officials for administration and enforcement.

29.   All of the Defendants, charged with enforcing the invalid and unconstitutional Article, are acting, continue to threaten to act, and have at all times pertinent acted in their official capacities so as to deprive Plaintiffs and others similarly

situated of their constitutional rights, as specified herein, and are persons who are genuine threats to continue enforcing the invalid Article, and whose actions in acting pursuant to the Article must be preliminarily and permanently restrained.

30.    Defendants' former and ongoing violation of established law prohibiting same and was in clear violation of Plaintiffs' established rights, and was done so and is being doing so with evil intent, recklessly or with callous indifference to the rights of Plaintiffs as owner and of the occupants. Before this intrusion into Plaintiffs' residential property on June 11, 2019, Plaintiffs were not permitted a bi-parte hearing prior to inspection and expressly withheld consent, and duly communicated their withholding of consent, to entry by Defendants Klimmer and LaPorte and to entry by anyone else into the subject premises (1512 Lewis Street). Fox withheld consent to entry by Klimmer and LaPorte and to entry by anyone else. Klimmer told Fox she was obligated to voluntarily unlock and open the doors to allow him and LaPorte into Plaintiffs' home and Fox then notified him clearly that any such entry and inspection was over her objection and would be done under her protest as doing so would be in violation of Plaintiffs' constitutional rights. Plaintiffs refused to do any affirmative act to allow entry. Klimmer and LaPorte nonetheless proceeded to enter the home by force. A swarm of City officials and police officers numbering six or more, immediately entered by force. Immediately upon gaining forcible entry, Klimmer and LaPorte entered the home and thoroughly searched and inspected all areas and rooms in the home.

31.   Defendant Klimmer handcuffed Fox and imprisoned her in a police car. She remained handcuffed and so imprisoned for approximately one hour and fifteen minutes, when Klimmer finally released her, ultimately acceding to her demands and protestations against being unlawfully and unconstitutionally detained while Defendants conducted the unconstitutional search of Plaintiffs' home. Fox was living there with here two young daughters, who were in the house without the presence of their mother (detained outside) during the entire time of the search. Defendants Fish and Batterson were also present, representing the City, both of whom were accompanied by several police cars and a number of other persons in City vehicles; (b) Fox stated that she resisted the search as wrongful; (c) Defendants asked her for her driver's license and she refused, saying this was her home and that they had no good reason to have her driver's license. Fox was fearful of, among other things, being dispossessed if City officials gained entry into her home, in part because of an earlier case in which the City dispossessed one of its citizens in her neighborhood of his home for several days because his home was, in view of the City decisionmakers, uninhabitable for being overly cluttered. Despite her refusal to consent to his entry and her declining to use her key to unlock and open the door for him, Defendants gained entry by forcibly prying the door open. Defendants knew or should have known that their doing so was the product of an objectively unreasonable decision, there being no emergency or exigent circumstance, was in violation of established law prohibiting same, and was in clear

violation of Plaintiffs' and Fox's daughters' established rights. Yet they did so with evil intent, recklessly or with callous indifference to the rights of the owner and all of the occupants of the home.

32.   Defendant Klimmer did use excessive force to injure Fox in her person and falsely to arrest her by immobilizing and imprisoning her in his police car for a great while, and rousing and disrupting her young daughters from their slumber by cold, dark, harsh and cruel surprise, merely as retaliation for her protesting the search of a home not owned by her and by not consenting to the search and by not allowing ingress by affirmative act, all in plain and egregious violation of Plaintiffs' and Fox's daughters' constitutional and other rights, much to the physical and emotional injury of Fox and remaining Plaintiffs.

33.   City officials have charged Plaintiffs fees calculated at a rate of over $240/hour for their inspections of Plaintiffs' residential real property. In prior years they sent bills to Plaintiffs, as well, for fees calculated at an hourly rate in excess of $200. According to the City's website, the City currently charges those similarly situated to Plaintiffs initial housing inspection fees at the rate of $208.88 per hour, additional inspections not included in the initial housing inspection at $208.88 per hour and an additional fee of $208.88 per hour for each search warrant "in addition to administrative and police costs incurred for a housing inspection conducted under an administrative search warrant for a dwelling." http://www.cityofjackson.org/303/Inspection-Fees (last

accessed November 5, 2019). These fees have increased gradually over time. Defendants have further threatened to impose fines on Plaintiffs for asserting their rights to pre-inspection compliance review. There is not now nor has there ever been any pre-inspection compliance review granted or allowed by Defendants under the ordinance.

34.    Defendants have systematically, habitually, continually, and as a matter of custom, practice and policy harassed Plaintiffs over a long period of time with great and unwarranted, unlawful, and unconstitutional molestation concerning these searches. Despite the deficiencies in and surrounding the warrant, that was the warrant City officials acted upon in forcibly gaining entrance to the subject premises.

35.    As a direct and proximate result of these constitutional violations, Plaintiffs have suffered grievous economic and non-economic injuries, including: severe emotional injury; ongoing mental anguish and suffering; defamation; humiliation; embarrassment; social stigma; feelings of lack of self-worth and legitimacy; feelings of having been profoundly violated by such egregious and violent invasions of personal privacy and governmental invasion of dwellings.

36.    Additionally, all sums collected under the Article constitute an unconstitutional tax that the City must be made to disgorge as money had and received; alternatively, this Court should impose a constructive trust over such fund as wrongful gain to be held for the ultimate benefit of Plaintiffs.

### COUNT I

14

**FACIAL AND AS APPLIED INVALIDITY OF ORDINANCE UNDER FOURTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER 42 U.S.C. § 1983**

**AND**

**ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER  42 U.S.C. § 1983**

37.    The ordinance on its face and as applied violates constitutional guarantees of the right to privacy and the right to be free from unreasonable searches and seizures.

38.    The City, acting under color of local law, has deprived and threatens to continue to deprive Plaintiff of their rights under the fourth amendment to the constitution, made applicable to the states under the fourteenth amendment, as detailed herein. Likewise, the individual Defendants, acting under color of state law, have subjected, are subjecting, and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress.

39.    Where, as here, the challenged governmental action is a legislative enactment itself, facial unconstitutionality imposes strict municipal liability on the City of Jackson under 42 U.S.C. § 1983.

40.    As a direct and proximate result of the deprivation of these constitutionally guaranteed rights and privileges pursuant to governmental enactments, custom, policy, and common plan, Plaintiffs have suffered damages as detailed herein. That is, by

15

adoption, operation and enforcement of the Article, Defendants have caused and continue to cause unreasonable invasions of privacy, unreasonable searches and seizures without probable cause, and the unreasonable searches and seizures of Plaintiffs' very homes, intrusions into Plaintiffs' seclusion, intruding into the most precious sanctum sanctorum of modern men, women and children for peace and quietude, against which such intrusions are to be paramount under the fundamental laws of our nation and the most fundamental of our valued societal norms.

41.    In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below.

## COUNT II

### FACIAL AND AS APPLIED INVALIDITY OF ORDINANCE UNDER FIFTH AMENDMENT AND STRICT LIABILITY OF DEFENDANT THE CITY OF JACKSON FOR REDRESS UNDER  42 U.S.C. § 1983

### AND

### ACCOUNTABILITY OF INDIVIDUAL DEFENDANTS UNDER  42 U.S.C. § 1983

42.    The ordinance on its face and as applied violates constitutional guarantees of the fifth amendment right to procedural due process, that is, the rights to notice and an opportunity to be heard. Plaintiffs have a constitutionally protected property right in their dwellings, and further have a constitutionally protected property right in the money

assessed as fees and fines under the Article, and the additional right not to have their estates in land encumbered by municipal collection liens authorized under the Article and the concomitant right that there shall be no deprivation of such property rights without procedural due process of law.

43.    The City, acting under color of local law, has deprived and threatens to continue to deprive Plaintiffs of their rights under the fifth amendment to the constitution, made applicable to the states under the fourteenth amendment, as detailed herein. Likewise, the individual Defendants, acting under color of state law, have subjected, are subjecting, and threaten to continue to subject Plaintiffs to the deprivation of rights, privileges and immunities secured by the constitution and laws of the United States as detailed herein and are, therefore, liable to Plaintiffs for redress.

44.    Where, as here, the challenged governmental action is a legislative enactment itself, facial unconstitutionality imposes strict municipal liability on the City of Jackson under 42 U.S.C. § 1983.

45.    As a direct and proximate result of the deprivation of these constitutionally guaranteed rights and privileges pursuant to governmental enactments, custom, policy, and common plan, Plaintiffs have suffered damages as detailed herein. That is, by adoption, operation and enforcement of the Article, Defendants have caused and continue to cause Plaintiffs deprivation of their property rights without procedural due process of law under the fifth amendment, the most basic right guaranteeing

fundamental fairness in a free society. Plaintiffs are entitled to notice and opportunity for hearing appropriate to the nature of the case; Defendants have deprived and are continuing to deprive Plaintiffs of these fundamental rights under their enactments, customs, policies, and common plans. The Article is woefully bereft of ensuring precompliance *bi-parte* review at a hearing in front of a neutral arbiter or decisionmaker before the search is to take place under the due process clause. The right to be heard is of no value unless one is properly informed that the matter is pending and it is up to such person whether to contest it or consent to it. Plaintiffs have been unconstitutionally deprived of the elementary and fundamental requirement of due process that is notice, reasonably calculated under all the circumstances, to apprise them as interested persons of the pendency of the proceeding and the opportunity to present their objections before the possibility of any deprivation of property rights may come into play. The Article on its face falls far short of meeting such requirements under the circumstances.

46.     In addition to the right to recover damages from the City and the individual Defendants under Section 1983, Plaintiffs are also entitled to the declaratory and injunctive relief from Defendants prayed for below. The ordinance on its face and as applied violates constitutional guarantees of the right to procedural due process.

## COUNT III

### INDIVIDUAL LIABILITY OF KLIMMER AND LAPORTE UNDER 42 U.S.C. § 1983 FOR DESTRUCTION OF PROPERTY, UNREASONABLE SEARCHES AND SEIZURES, AND THE DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF  CLEARLY ESTABLISHED LEGAL RIGHTS OF

## **PLAINTIFFS**

47.     Defendants Klimmer and LaPorte acted violently and with excessive force, objectively unreasonably, with evil intent, or with reckless or callous disregard or indifference to the constitutional rights of Plaintiffs, in violation of clear legal rights of Plaintiffs and established law in maliciously arresting Fox, gaining unlawful entry into the premises, and in intruding on their privacy and on the privacy of Fox's daughters.

48.     Such acts did not require the exercise of judgment and discretion under the circumstances. Such acts caused the deprivation of Plaintiffs' fourth and fifth amendment rights as incorporated into state law by the fourteenth amendment, as detailed herein, by such individual Defendants acting under color of state law and thus in violation of 42 U.S.C. § 1983.

49.     As a direct and proximate result of their actions, Plaintiffs suffered deprivations of the constitutional rights detailed herein, namely the right to privacy and to be free of unreasonable searches and seizures under the fourth amendment and the right to procedural due process; that is, pre-compliance review as detailed herein.

50.     Such defendants are not entitled to assert personal immunity, governmental immunity, or qualified immunity under law because of the directness and nature of their acts causing the constitutional deprivations both under color of their authority as state officials and acting under color of local enactments, policies, customs and common plan in purporting to enforce the Article.

51.    As a direct and proximate result of the deprivation of constitutionally guaranteed rights and privileges, Plaintiffs have suffered damages as detailed herein.

52.    In addition to the right to recover damages from these individual Defendants, Plaintiffs are also entitled to the declaratory and injunctive relief prayed for below.

## COUNT IV

## **EQUITABLE RELIEF**

53.    Plaintiffs have presented this Court with an actual case and controversy sharp and ripe for adjudication, as demonstrated by the legal and constitutional positions Defendants have asserted in diametric opposition to those of Plaintiffs, culminating in the unconstitutional arrest and imprisonment of Fox and the malicious entry into Plaintiffs' residential real property.

54.    The Court may, and should, under 28 U.S.C. § 2201, declare the respective rights and legal relations of the parties *inter sese*.

55.    Specifically, as well as demanding judgment for compensatory and punitive money damages against Defendants, Plaintiffs pray that this Court enter a declaratory judgment that the Article is facially unconstitutional and unconstitutional as applied as violative of the rights of its citizens under the fourth and fifth amendments to the constitution made applicable to the states under the fourteenth amendment and to order the imposition of  a constructive trust over all monies and other benefits wrongfully

20

received or collected by the City of Jackson pursuant to its unconstitutional enactment and the wrongful enforcement of such enactment or, alternatively, the disgorgement of such fund or benefit to or for the benefits of Plaintiffs, along with such other or further declaratory or equitable relief this Court deems just, including the imposition on such funds a constructive trust for the benefit of Plaintiffs.

56.    Further, Plaintiffs lack an adequate remedy at law to redress the threat of harm and ongoing harm to their constitutional rights, and this Court's intervention by preliminary and permanent injunction or decree is necessary to protect Plaintiffs' constitutional rights as established herein.

57.    Without this Court's equitable intervention by granting such injunctive relief, Plaintiffs will be irreparably harmed by the continuing violation of their constitutional rights.

58.    As demonstrated above, Plaintiffs are likely to prevail on the merits of one or all of their substantive claims set out above, the balance of harms and equities substantially favors Plaintiffs, and such injunctive relief would preserve the peace and status quo, as well as serve the public interest in the constitutional governmental regulation of private property and in the health, safety, and public morals of the citizens of the City of Jackson while promoting private investment in the improvement and expansion of choices of living quarters and residential properties in the City of Jackson.

59.    Specifically, Plaintiffs pray that this Court enter a preliminary injunction,

followed by a permanent injunction restraining Defendants and those acting in active concert with them who have notice of such injunction from enforcing any provision of the Article or collecting any further sums pursuant to it as facially an as-applied violative of Plaintiffs' fourth and fifth amendment rights as detailed and for the reasons detailed herein, along with such other or further declaratory or equitable relief this Court deems just.

## COUNT V

### DEMAND FOR JUDGMENT AND
### PRAYER FOR SPECIFIC EQUITABLE RELIEF

60.     Plaintiffs hereby demand judgment against Defendants for all actual, punitive, and other damages to which they are entitled.

61.     Plaintiffs further specifically request that this Court grant them the declaratory, injunctive, and other equitable relief detailed in Count IV, above.

62.     Plaintiffs further pray this Court for an award of court costs and other expenses of litigation, including attorney's fees under 42 U.S.C. § 1988 or other applicable law.


Respectfully submitted,

CRANBROOK LAW GROUP, P.C.


By_____/s/Barry R. Powers_____
        Barry R. Powers  (P40589)

38550 Garfield Road, Suite A
Clinton Township, Michigan 48038
(248) 515-8599
Counsel for Plaintiffs

DATED: June 10, 2022