UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH FOX,
MICHAEL WISNIEWSKI, and
OSWEGO VIEW, LLC,

                Plaintiffs,

v.

THE CITY OF JACKSON,
MICHIGAN, et al.,

                Defendants.

_____/

Case No. 22-cv-11298

Honorable Linda V. Parker

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 47)

### I. Introduction

Plaintiffs initiated this action on June 11, 2022, claiming violations of their civil rights arising from the enforcement of the City of Jackson's ordinances applicable to "non-owner occupied" residential property (i.e., residential rental property). Plaintiffs originally named twenty-one defendants in this action; however, they voluntarily dismissed their claims against three defendants on September 27, 2022 (ECF No. 6), and the Court dismissed their claims against fourteen additional defendants for insufficient process on March 14, 2023 (ECF Nos. 30, 36).

The matter is presently before the Court on a summary judgment motion filed under Federal Rule of Civil Procedure 56 on November 8, 2024, by the

remaining four Defendants: City of Jackson, Michigan ("Jackson"); Jackson City
Attorney Matthew M. Hagerty ("City Attorney Hagerty"); Jackson Police
Department Detective Mike Klimmer ("Officer Klimmer");[1] and Jackson Assistant
City Manager and Director of Neighborhood Development and Economic
Operations Shane LaPorte ("City Manager LaPorte").  (ECF No. 47.)  After
receiving an extension of time to do so, Plaintiffs filed a response to the motion on
January 27, 2025.  (ECF No. 59.)  Without permission, Plaintiffs subsequently
filed two supplemental "briefs."  (ECF Nos. 60, 61.)  The first filing contained
only the appellate brief Plaintiffs' counsel filed in a similar case against Jackson.
(ECF No. 60.)  The second, incorrectly labeled an "Errata Sheet,"[2] included a brief
with argument and counsel's appellate brief.  (ECF No. 61.)  Defendants filed a
reply brief on February 10, 2025, in which they also ask the Court to strike
Plaintiffs' supplemental briefs.  (ECF No. 62.)

---

[1] At the time of the incident that is the subject of this lawsuit, it appears that Detective
Klimmer was still a patrol officer.  (*See, e.g.*, ECF No. 47-13.)  The Court therefore
refers to him as Officer Klimmer here.

[2] An "errata sheet" is "an attachment to a deposition transcript containing the
deponent's corrections upon reading the transcript and the reasons for those
corrections."  Black's Law Dictionary (12th ed. 2024); *see also* Fed. R. Civ. P.
30(e)(1).  Even if applicable outside this context, an errata sheet is an opportunity to
correct typographical or similar errors, not to add substance.

The Court is dispensing with oral argument with respect to Defendants'
motion pursuant to Eastern District of Michigan Local Rule 7.1(h).  For the reasons
that follow, the Court is granting Defendants' motion.

## II.  Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is
"whether the evidence presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as a matter of law."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time
for discovery and upon motion, Rule 56 mandates summary judgment against a
party who fails to establish the existence of an element essential to that party's case
and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine
issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the
"nonmoving party must come forward with specific facts showing that there is a
genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To
demonstrate a genuine issue, the nonmoving party must present sufficient evidence
upon which a jury could reasonably find for that party; a "scintilla of evidence" is

3

insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"'There is, however, an added wrinkle' where the record contains 'a videotape capturing the events in question.'" *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). As the Sixth Circuit summarized in *Shumate*:

> Because facts must be viewed in the light most favorable to the non-moving party only if there is a genuine dispute as to those facts, we may not adopt a version of the facts that is blatantly contradicted by video footage that is not doctored or altered in any way and which clearly depicts the events that actually happened. But we must nonetheless view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff, and must also make all reasonable inferences in their favor when undertaking the qualified immunity analysis on summary judgment.

*Id*. at 438 (cleaned up). Thus, if a reasonable juror could view the events depicted in a video only one way, that version of the facts must be accepted for purposes of resolving a summary judgment motion. *See Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Harris*, 550 U.S. at 380). On the other hand, if a reasonable jury could interpret the events shown in the video multiple ways or if the video does not show all relevant facts, such facts must be viewed in a light most favorable to the non-moving party. *Id*. (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

4

Here, the video recording from Officer Klimmer's body camera captured all relevant facts.  (ECF No. 47-14.)  A reasonable jury could view those facts in only one way.  For that reason, the Court's recitation of the facts does not include any contradictory assertions.

### III.  Factual and Procedural Background

### A.  Jackson Rental Ordinance

In 2012, Jackson adopted the Non-Owner Occupied Residential Property Registration Ordinance ("Ordinance") after "find[ing] that there are non-owner occupied residential dwellings or units in the city that have become unsafe, unsanitary and unsecure due to deterioration."  (ECF No. 47-2 at PageID.420.) The Ordinance sets forth registration requirements before a property owner may "rent, lease, offer for rent or lease, or allow another person to occupy any non-owner occupied residential dwelling or unit,"[3] which include the completion of an

---

[3] The Ordinance defines "non-owner occupied residential dwelling or units" as:

> [A]ny residential dwelling or unit constructed, intended, or currently used as habitable space in which the owner of the dwelling or unit does not reside, or where individuals other than or in addition to the owner reside, whether pursuant to an oral or written lease or for other valuable consideration including, but not limited to, cash, barter of goods and services, and imputed rent. This does not include relatives that reside with the owner in the same unit. This term also does not refer to an individual residing in a dwelling or unit who is in a domestic partnership with the owner. This term does not apply to any residential dwelling or unit which is the primary domicile of the owner and is temporarily unoccupied for a period of not more than one hundred sixty (160) days.

application form and the payment of fees.  (*Id*. at PageID.422-426 §§ 14-4 to 14-9.)  The Ordinance also requires that dwellings be maintained and repaired in accordance with the Michigan Building Code or Michigan Residential Code.  (*Id*. at § 14-27.)[4]

Jackson's chief building official, fire official, and the chief of police, or their respectively designated representatives, have the power to enforce the provisions of the Ordinance.  (*Id*. § 14-41.)  To that end, Section 14-42 of the Ordinance allows for inspections of dwellings and establishes conditions for those inspections, including, as follows:

> (d)  In an emergency situation, the chief building official, chief of police and fire official have the right to enter at any time for purposes of this article, an emergency shall exist when the chief building official, chief of police or fire official has reasonable grounds to believe that a condition hazardous to health or safety exists on the premises and requires immediate attention.

> (e)  In a nonemergency situation or where the owner or occupant of any dwelling demands a warrant for inspection of the premises, the chief building official, chief of police or fire official shall obtain a warrant from a court of competent jurisdiction.

_____

(*Id*. § 14-3.)

[4] Defendants attach only a portion of the Ordinance to their summary judgment motion.  (*See* ECF No. 47-2.)  For those provisions not included in Defendants' filing, the Court turned to Jackson's official website.  *See* *https://www.cityofjackson.org/169/Municipal-Regulations*.

### B.  Plaintiffs' Property and Jackson's Attempted Inspections

Plaintiff Michael Wisniewski, as a member of Plaintiff Oswego View, LLC,

owns property located at 1512 Lewis Street in Jackson.  (ECF No. 47-3 at

PageID.438.)  Plaintiff Elizabeth Fox began renting the dwelling on the property in

2012.  (*Id*. at PageID.440; ECF No. 63 at PageID.1022.)  Ms. Fox lived there with her

husband and children.  (ECF No. 47-4 at PageID.1024, 1027.)

On September 10, 2018, Jackson sent an Initial Inspection Notification Letter to

Oswego View via first class mail, indicating that an inspection of the 1512 Lewis

Street property was scheduled for December 17, 2018.  (ECF No. 47-5.)  The

inspection subsequently was rescheduled to February 6, 2019, and a notice of the

revised date and time were sent to Oswego View on December 17, 2018, via first class

mail (ECF No. 47-6).

City Manager LaPorte and Code Enforcement Officer Dave Batterson arrived at

the property on February 6 for the scheduled inspection, but Mr. Wisniewski refused to

let them inspect the interior of the home.  (ECF No. 47-7; ECF No. 47-3 at

PageID.455-56.)  An exterior inspection of the property was completed, which

revealed issues with the chimney, siding, and main entrance lighting.  (ECF No. 47-8.)

Jackson sent Oswego View via first class mail a "Follow-Up Inspection Letter Final

Notice Prior to Search Warrant Request" on February 11, 2019, scheduling an interior

inspection for April 3, 2019.  (ECF No. 47-9.)  Access was again denied on that date.

(*See* ECF No. 47-7.)

7

On May 8, 2019, Jackson sent Oswego View and Mr. Wisniewski via certified mail a "Follow-Up Initial Inspection Letter Final Notice – Execution of Search Warrant." (ECF No. 47-10.) The notice scheduled an inspection for June 11, 2019, and warned that the "[f]ailure by you or your agent to appear and allow voluntary access will require the execution of an **ADMINISTRATIVE SEARCH WARRANT** to gain entry and proceed with the inspection." (*Id.*) An "Administrative Search Warrant Notice" also was posted on the front door of 1512 Lewis Street, reflecting the scheduled inspection and that "[a]bsent voluntary entry, inspectors and officer(s) from the Jackson Police Department will enter the property under authority of an ADMINISTRATIVE SEARCH WARRANT to conduct the required inspection. If necessary, entry will be gained through execution of the warrant." (ECF Nos. 47-10, 47-11.) Like all of the previous notices sent to Oswego View and Wisniewski, a number was provided to call the Jackson Neighborhood & Economic Operations' office with questions. (ECF No. 47-10 at PageID.518; *see also* ECF No. 47-5 at PageID.503; 47-6 at PageID.507; ECF No. 47-9 at PageID.515.)

On June 10, 2019, Mark Fish, an Electrical Inspector for Jackson's Department of Neighborhood and Economic Operations, submitted an application for an administrative warrant in the 12th District Court for the State of Michigan. (ECF No. 47-12.) In his affidavit in support of the warrant to inspect the interior of 1512 Lewis Street, Inspector Fish explained that the "property ha[d] been selected for inspection pursuant to the Systemic Code Enforcement Inspection Program adopted by the

Jackson City Commission[] . . . to ascertain health, safety, and welfare threatening violations existing on or within the property that may be contrary to Chapter 14 of the City Code[,]" and that access to the interior was necessary to assess whether any unsafe conditions existed.  (ECF No. 47-7.)  Inspector Fish further indicated that the property owner had been notified of Jackson's intent to conduct an inspection on two previous dates, but entry had been denied.  (*Id*.)  He also provided that an exterior inspection on February 6, 2019, detected violations of Jackson's Housing Code.  (*Id*.)

A magistrate judge approved the administrative warrant on the same date.  (ECF No. 47-12.)

## C. Execution of the Administrative Warrant & Ms. Fox's Contempt Citation

Inspector Fish, City Manager LaPorte, and Officer Klimmer went to 1512 Lewis Street on June 11, 2019, armed with the administrative warrant.  (ECF No. 47-13 at PageID.531.)  From the moment the Jackson officials approached the property until Officer Klimmer departed the scene, the incident was recorded on the officer's body camera.  (*See* ECF No. 47-14.)

When they arrived, Mr. Wisniewski, Wisniewski's daughter (who videotaped the encounter), the daughter's husband, and Ms. Fox were waiting in the front yard.[5] (ECF No. 47-3 at PageID.458; ECF No. 63 at PageID.1063-64.)  Ms. Fox's two daughters, who were fourteen and fifteen years old at the time, were sleeping inside the

---

[5] Although Wisniewski's daughter filmed the entire encounter (*see* ECF No. 47-3 at PageID.461), the recording has not been introduced into evidence.

house.  (ECF No. 47-14.)  Ms. Fox had locked the home's doors.  (ECF No. 47-3 at PageID.458.)

The officials walked onto the property.  (*See* ECF No. 47-14.)  Officer Klimmer approached Mr. Wisniewski handed him the administrative search warrant and affidavit supporting the warrant.  (*Id.*)  Mr. Wisniewski read both.  (*Id.*)  He requested a copy of the exterior inspection report, which he was told the officers would try to get, and then asked for Officer Klimmer's name and badge number.  (*Id.*)  As Mr. Wisniewski read the paperwork, Inspector Fish approached, and Officer Klimmer obtained a copy of the exterior inspection report for Mr. Wisniewski.  (*Id.*)

Mr. Wisniewski then began questioning Officer Klimmer about the holdings of court decisions regarding the Fourth Amendment, including a decision by the Supreme Court of Minnesota.  (*Id.*)  Officer Klimmer told Mr. Wisniewski that he would not argue the law with him because he is not an attorney; however, he advised that the officials were not violating the property owner's rights because they had a warrant to enter the home.  (*Id.*)  Mr. Wisniewski indicated that he just wanted to read his cases "into the record."  (*Id.*)

City Manager LaPorte then approached and informed Officer Klimmer that the tenant was in the backyard and, while she did not want to come to the front yard, would speak to Officer Klimmer in back.  (*Id.*)  Officer Klimmer went to speak to Ms. Fox, who was gardening.  (*Id.*)  He introduced himself to Ms. Fox and then asked if she knew what was going on, to which she responded that "she knew exactly what is

10

going on." (*Id*.) Officer Klimmer explained that he understood Ms. Fox did not want them to enter the property, but that the search warrant allowed them to, and she could be cited or arrested for violating a court order if she did not let them in. (*Id*.) In response to Ms. Fox's perhaps rhetorical question of how she could be arrested for protecting her Fourth Amendment rights, Officer Klimmer explained that when a warrant is issued based on probable cause, they would not be violating her rights by executing it. (*Id*.)

Ms. Fox asked what the probable cause was, and Officer Klimmer explained that the exterior inspection found code violations. (*Id*.) Ms. Fox asked to see the exterior inspection report, which she was provided. (*Id*.) Ms. Fox and Mr. Wisniewski then began arguing with City Manager LaPorte and Inspector Fish. (*Id*.) Officer Klimmer interrupted and indicated that they would not sit here and argue as the warrant gave them permission to enter and conduct the search. (*Id*.)

Because the home's doors were locked, Officer Klimmer advised Ms. Fox that she could either unlock the doors or they would be forced to kick in the door and she would get a ticket. (*Id*.) Ms. Fox responded, "a ticket for not letting you into my property." (*Id*.) Officer Klimmer indicated that "it is contempt of court when I have a judge's order to enter your property." (*Id*.) Ms. Fox indicated that she "would not be opening the door, and that she does not consent." (*Id*.) When Officer Klimmer asked for Ms. Fox's identification, she said she would not be getting it. (*Id*.)

Officer Klimmer then stated that he was placing Ms. Fox under arrest for obstructing him in his duties. (*Id.*) She approached him and put her hands behind her back to be handcuffed. (*Id.*) Ms. Fox testified at her deposition that Officer Klimmer placed the handcuffs on her wrist too tightly; however, she did not tell him they were too tight or complain that they were causing her discomfort or pain.[6] (ECF No. 63 at PageID.1069.)

As Officer Klimmer walked Ms. Fox to his patrol car, Mr. Wisniewski asked about the children in the house, and Officer Klimmer indicated that they could call CPS. (*See* ECF No. 47-14.) Ms. Fox said she would call her mother. (*Id.*)

Officer Klimmer opened the patrol car's rear door for Ms. Fox, and she sat down inside. (*Id.*) Officer Klimmer then requested a backup unit, as they were going to have to force the door of the residence to gain entry to execute the administrative warrant. (*Id.*) Officer Klimmer asked Mr. Wisniewski if he has a key to the home. (*Id.*) Mr. Wisniewski said he does, but his attorneys told him to let them "kick the door in and they would settle it in civil court." (*Id.*)

---

[6] Ms. Fox asserts in her affidavit that Officer Klimmer knew the handcuffs were too tight and that she was in pain because, when he removed them, he told Ms. Fox "to roll [her] wrists in a circular motion – it helps." (ECF No. 59-1 at PageID.947 ¶ 34.) In the video recording from Officer Klimmer's body camera, as he removes the handcuffs from Ms. Fox's wrists, Officer Klimmer says, "sorry, I know your arms are probably . . .uh, twirl your wrists because it does help." (ECF No. 47-14 at 55:29.) Officer Klimmer says nothing about the handcuffs being painful or causing Ms. Fox pain. (*Id.*) And as Ms. Fox acknowledged at her deposition, she never complained to Officer Klimmer that the handcuffs were too tight or causing her pain.

Officer Klimmer got into the driver's seat of the patrol car to ask Ms. Fox about the age of her children, at which time she began arguing with him about what was happening. (*Id*.) Officer Klimmer again explained that they had a right to search once the warrant was issued by the court, why he had intended to cite her for contempt, and why she ultimately was arrested for obstruction. (*Id*.) Officer Klimmer and Ms. Fox continued talking, in a non-confrontational manner, when Mr. Wisniewski knocked on the patrol car and told her not to talk to the officer and to say she wants an attorney. (*Id*.)

Ms. Fox continued to talk to Officer Klimmer, who indicated that he was trying to have this go smoothly and would not write her a ticket for contempt of court if she cooperated and opened the door for them. (*Id*.) Ms. Fox's answer is not audible, but Officer Klimmer's response and subsequent discussions with Inspector Fish reflect that she was unwilling to cooperate based on Mr. Wisniewski's instructions or at least because she felt she needed for it to appear to her landlord that she was on his side, and that she told Office Kimmer to just break the door down. (*Id*.)

Inspector Fish approached and spoke with Officer Klimmer, reporting that City Manager LaPorte had tried to contact the city's attorneys for guidance, but none of the attorneys were in. (*Id*.) Officer Klimmer told Ms. Fox that he was going to have her remain in the patrol car while they waited, and he inquired as to whether she was "as comfortable as she could be." (*Id*.) Ms. Fox said that she was, although it was a little stuffy. (*Id*.) Officer Klimmer indicated that he did have the air blowing. (*Id*.) As they

13

continued to wait, Officer Klimmer and Ms. Fox interchangeably talked amicably. She voiced no complaints. (*Id*.)  Before Officer Klimmer exited the patrol car to enter the home, he again asked Ms. Fox if she was comfortable and offered to "crank up" the air for her. (*Id*.)

Thirty-five minutes after arriving at the property, Officer Klimmer used a credit card to jimmy the lock on the home's rear door to gain entry. (*Id*.; *see also* ECF No. 63 at PageID.1079.)  No damage was done to the door. (ECF No. 63 at PageID.1079.) City Manager LaPorte, accompanied by Officer Klimmer, then proceeded with the interior inspection. (*See* ECF No. 47-14.)  Before going upstairs, where Ms. Fox's daughters remained sleeping, Officer Klimmer suggested that they bring Ms. Fox inside to wake them, so as not to scare them. (*Id*.)  Officer Klimmer returned to the patrol car and explained to Ms. Fox why they wanted her to come inside. (*Id*.)  After Ms. Fox exited the patrol car, Officer Klimmer removed the cuffs from her wrists. (*Id*.)  Officer Klimmer and City Manager LaPorte waited downstairs while Ms. Fox woke her daughters, and then they completed the interior inspection approximately 25 minutes after entering the home. (*Id*.)

City Manager LaPorte then attempted to inspect the detached garage, but the side-entry door was locked. (*Id*.)  When Officer Klimmer was unable to unlock the door with a credit card, Ms. Fox was asked to unlock it, and she agreed to do so. (*Id*.) City Manager LaPorte then quickly inspected the interior. (*Id*.)

14

Prior to departing the property, Officer Klimmer handed Ms. Fox her citation for obstructing and explained what she needed to do to respond to it and how to reduce the charge. (*Id.*) City Manager LaPorte completed his report and then provided a copy to Mr. Wisniewski and Ms. Fox. (*Id.*) The officials departed the property an hour and fourteen minutes after arriving. (*Id*.)

Jackson subsequently dismissed the citation issued to Ms. Fox. (ECF No. 63 at PageID.1079; ECF No. 47-13 at PageID.537.)

On June 10, 2022, Plaintiffs filed their Complaint in this action asserting the following counts:

(I)  Facial and As Applied Invalidity of Ordinance under Fourth Amendment and Strict Liability of Defendant the City of Jackson for Redress under 42 U.S.C. § 1983 and Accountability of Individual Defendants under 42 U.S.C. § 1983;

(II)  Facial and As Applied Invalidity of Ordinance under Fifth Amendment and Strict Liability of Defendant the City of Jackson for Redress under 42 U.S.C. § 1983 and Accountability of Individual Defendants under 42 U.S.C. § 1983;

(III)  Individual Liability of Klimmer and LaPorte under 42 U.S.C. § 1983 for Destruction of Property, Unreasonable Searches and Seizures, and the Denial of Procedural Due Process in Violation of Clearly Establish Legal Rights of Plaintiffs;

(IV)  Equitable Relief;

(V)  Demand for Judgment and Prayer for Specific Equitable Relief.

(*See generally* ECF No. 1 (capitalization removed).)

15

## IV. Defendants' Arguments

Defendants assert several arguments in support of their summary judgment motion. First, Defendants argue that the Ordinance is constitutionally valid on its face as it bars warrantless searches without consent. In support, Defendants point to the Sixth Circuit's decision in *Berkemeier v. City of Jackson*, No. 23-1641, 2024 WL 1718680 (6th Cir. Apr. 22, 2024), finding the same ordinance constitutional. Defendants also point to the same holding by two judges in this District: the Honorable Robert H. Cleland's decision in *Berkemeier*, No. 19-cv-12132, 2022 WL 4378687 (E.D. Mich. Sept. 22, 2022), and the Honorable Mark A. Goldsmith's decision in *Williams v. City of Jackson*, No. 21-cv-10749 (E.D. Mich. Sept. 22, 2022), ECF No. 40. Defendants argue that there is no evidence that the Ordinance was unconstitutionally applied to Plaintiffs.

Defendants seek summary judgment as to Plaintiffs' Fifth Amendment procedural due process claim because the Fourth Amendment already provides textual protection from warrantless searches. Again, Defendants rely on the same holding in *Berkemeier*, as well as *M.S. Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 412-13 (E.D. Mich. 2019). Because Defendants had an administrative warrant to search 1512 Lewis Street, which was issued by a court of competent jurisdiction, Defendants argue that no Fourth Amendment violation occurred. Moreover, Defendants maintain that they are entitled to qualified immunity. Defendants also contend that City Attorney Hagerty is not liable for any alleged violation as he was not present when the

16

search occurred and did not even begin his position as the City Attorney until January 2020.

Turning to Plaintiffs' excessive force and false arrest claim, Defendants point out that neither Mr. Wisniewski nor Oswego View were arrested or subjected to any force. Defendants argue that the undisputed evidence supported probable cause for Ms. Fox's seizure for obstruction and that excessive force was not used when Officer Klimmer placed her in handcuffs and inside the patrol car.

Counts IV and V, Defendants point out, are not substantive claims but seek only forms of relief. For that reason, and because Plaintiffs fail to demonstrate a right to relief on any of their substantive claims, Defendants maintain that they also are entitled to summary judgment on these counts, as well.

## V. Plaintiffs' Response

The Court could conclude from Plaintiffs' response brief that they have forfeited all, or at least many, of their claims.

The first nine and a half pages of Plaintiffs' 21-page brief cuts and pastes verbatim the assertions in Ms. Fox's attached affidavit. (*See* ECF No. 59 at PageID.916-925.) Interestingly, these are the only "facts" provided by Plaintiffs, and some of Ms. Fox's assertions are contradicted by the video of the incident. After briefly stating the summary judgment standard, Plaintiffs devote the next seven pages of their brief summarizing caselaw on "warrantless arrest[s] without probable cause[,]" qualified immunity, and "arrest[s] without probable cause coupled with use of

17

excessive force," never explaining how this law applies to this case. (*Id.* at

PageID.926-933.)

In the final page of their brief, Plaintiffs offer three paragraphs, each seemingly

attempting some type of argument. (*Id.* at PageID.934-35.) However, they are of

minimal use to the Court in analyzing Defendants' arguments in support of summary

judgment. For example, the first paragraph reads:

> The Verification of Elizabeth Fox and other testimonial and documentary
> evidence submitted herewith plainly demonstrates both plain violations
> of her constitutional rights, as well as Defendants' inability to sustain
> their affirmative defense of qualified immunity.

(*Id.* at PageID.934.) In the third paragraph, Plaintiffs direct the Court to their counsel's

appellate brief in *Berkemeier*, and they assert that "Defendants' reliance on the Sixth

Circuit's unpublished *per curiam* memorandum opinion in that case is misplaced"

given that such unpublished decisions "carr[y] no precedential weight." (*Id.* at

PageID.935.)

Arguments adverted to " 'in a perfunctory manner' without an 'effort at

developed argumentation,'" are deemed forfeited. *United States v. Hendrickson*, 822

F.3d 812, 829 n.10 (6th Cir. 2016); *see also Herring v. City of Ecorse*, No. 24-1916,

2025 WL 2105263, at *5 (6th Cir. Sept. 16, 2024) (quoting *Berkshire v. Dahl*, 928

F.3d 520, 530 (6th Cir. 2019) (recognizing that the Sixth Circuit has used "waiver" and

"forfeiture" interchangeably sometimes, but explaining that "[w]aiver is affirmative

and intentional, whereas forfeiture is a more passive failure to make the timely

assertion of a right"). "A party may not raise an issue by 'mentioning it in the most skeletal way, leaving the court to put flesh on its bones.'" *Hendrickson*, 822 F.3d at 829 n.10 (quoting *Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)) (cleaned up).

Plaintiffs never even remotely address Defendants' arguments for dismissal of Plaintiffs' Fifth Amendment claim, Mr. Wisniewski's or Oswego View's excessive force and unlawful arrest claims, City Attorney Hagarty's liability, or Counts IV and V. Thus, the Court finds that Plaintiffs have forfeited those arguments. The Court addresses below what remains of their Complaint.

## VI.  Applicable Law & Analysis

### A.  Plaintiffs' Facial and As-Applied Constitutional Challenges to the Ordinance

In *Berkemeier*, the Sixth Circuit upheld Judge Cleland's decision finding the Ordinance at issue in the present matter constitutionally valid both in its search provisions and in its charge of inspection fees to the property owner. 2024 WL 1718680, at *1; *see also Berkemeier*, 2022 WL 4378687. Plaintiffs' only response is that the Sixth Circuit's unpublished decision is not binding, and that this Court, unlike the Sixth Circuit, should be persuaded by the arguments their counsel made in his appellate brief in *Berkemeir*.

Plaintiffs are correct that unpublished Sixth Circuit decisions are not binding on anyone but the parties to the particular case. *See Baltrusaitis v. UAW*, 86 F.4th 1168, 1177 (6th Cir. 2023) (citing *In re Blasingame*, 986 F.3d 633, 637 n.2 (6th Cir. 2021)); *United States v. Flores*, 477 F.3d 431, 433-34 (6th Cir. 2007). Such decisions are

persuasive, however, and even Sixth Circuit panels consider them regularly.  *See, e.g.,*
*United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009); *United States v. Sanford*, 476
F.3d 391, 396 (6th Cir. 2007) (citing *Taxpayers United for Assessment Cuts v. Austin*,
994 F.2d 291, 295 n.3 (6th Cir. 1993); *Eyerman v. Mary Kay Cosmetics*, 967 F.2d 213,
218 (6th Cir. 1992)).  Non-binding decisions are particularly useful when they address
the same or similar issues presented to or interpret the same statute being considered
by the court.  *See, e.g., House v. United* States, 872 F.3d 748, 753 (6th Cir. 2017)
(finding prior panel's interpretation of a Michigan statute, although unpublished,
persuasive).  The same can be said of district-court decisions, whether published or
not.  *See United States v. Flores*, 477 F.3d 431, 437 (6th Cir. 2007) (finding district
court decision instructive).

The Court finds the reasoning in the Sixth Circuit's and district judges'
decisions cited in Defendants' initial brief, which found the Ordinance constitutional
on its face and as applied, to be persuasive.[7]  Absent an emergency situation, the
Ordinance does not allow for warrantless searches without a property owner's consent.
Lacking consent or an emergency, Jackson officials must obtain a warrant from a court
of competent jurisdiction before entering property to conduct an inspection.  The

---

[7] As Defendants provided in a recent supplemental filing (ECF No. 64), another judge
in this District, the Honorable Jonathan J.C. Grey, also has found Jackson's Ordinance
constitutional: *903 W. Washington LLC v. City of Jackson*, No. 22-11110, 2025 WL
2448482, at * (E.D. Aug. 25, 2025).  Judge Grey cites several additional district court
decisions reaching the same result. *See id.* at *1 n.2.

enforcing officers here, like in *Berkemeier*, complied with the Ordinance by obtaining an administrative search warrant signed by a magistrate judge.  Plaintiffs have not challenged the validity of the warrant.

Defendants are therefore entitled to summary judgment on Plaintiffs' Fourth Amendment challenge to the Ordinance and their unlawful search claim, as pled in the Complaint.

In response to Defendants' motion, Plaintiffs also make the following assertion:

> Irrespective of the Fourth Amendment issues, defendants are further liable for conditioning City of Jackson residential property owners' exercise of their constitutional rights to withhold consent to administrative searches under the subject Ordinance on the payment of "lock-out" and "administrative search warrant application fees" to the City.

(ECF No. 59 at PageID.934.)  In support of such an "unconstitutional conditions claim," Plaintiffs cite *Black v. Village of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998), and *Williams v. City of Jackson*, No. 21-cv-10749, 2024 WL 3237135 (E.D. Mich. June 27, 2024*)*.  The first problem, however, is that Plaintiffs did not assert such a claim in their Complaint.  (*See generally* ECF No. 1.)

For similar reasons, the Honorable Jonathan J.C. Grey rejected the same argument when counsel for Plaintiffs raised it in another case brought by different property owners against Jackson and city enforcement officials.  *See 930 W. Washington LLC v. City of Jackson*, No. 22-cv-1110, 2025 WL 2448482, at *10 (E.D. Mich. Aug. 25, 2025) (citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008);

*Stevens v. Mich. State Ct. Admin. Off.*, No. 21-1727, 2022 WL 3500193, at *6 (6th Cir.

Aug. 18, 2022)).  As the Supreme Court explained in *Greenlaw*:

> In our adversary system, in both civil and criminal cases, in the first
> instance and on appeal, we follow the principle of party presentation.
> That is, we rely on the parties to frame the issues for decision and assign
> to courts the role of neutral arbiter of matters the parties present.

554 U.S. at 243.  Additionally, Plaintiffs offer no evidence of such fees being charged

to them or paid by them.

## B. Ms. Fox's Unlawful Arrest & Excessive Force Claim

Officer Klimmer arrested Ms. Fox for obstruction.  Under Michigan law, the

elements of resisting or obstructing a police officer in violation of Michigan Compiled

Laws § 750.81d(1) are: "(1) the defendant assaulted, battered, wounded, resisted,

obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had

reason to know that the person that the defendant assaulted, battered, wounded,

resisted, obstructed, opposed, or endangered was a police officer performing his or her

duties."[8]  *People v. Quinn*, 853 N.W.2d 383, 388 (Mich. Ct. App. 2014) (citing *People

v. Corr*, 788 N.W.2d 860, 863 (Mich. Ct. App. 2010)).  The evidence captured on

Officer Klimmer's body camera supports the lawful arrest of Ms. Fox for obstruction.

Plaintiffs do not develop any argument to show otherwise.

---

[8] Plaintiffs maintain that the correct statute is Michigan Compiled Laws § 750.479.  In
any event, Plaintiffs do not contest the applicable elements for obstruction under either
statute.

Plaintiffs claim that Officer Klimmer used excessive force by handcuffing Ms. Fox too tightly. "Not all allegations of tight handcuffing . . . amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). For Ms. Fox's "excessive handcuffing claim to survive summary judgment, Plaintiff[s] must point to evidence that (1) [s]he complained the handcuffs were too tight; (2) Officer [Klimmer] ignored h[er] complaint; and (3) [s]he experienced 'some physical injury' resulting from the handcuffing. *Strickland v. City of Detroit*, 995 F.3d 495, 508 (6th Cir. 2021) (citing *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)); *see also Lyons*, 417 F.3d at 575-76.

Plaintiffs do not identify evidence to satisfy these elements. Ms. Fox acknowledged at her deposition that she never complained to Officer Klimmer that the handcuffs were too tight. Plaintiffs fail to address, much less point to evidence, establishing "some physical injury" to Ms. Fox due to the handcuffing.

## VII. Conclusion

By failing to address Defendants' arguments for summary judgment, Plaintiffs have forfeited their Fifth Amendment due process claim, their claims against City Attorney Hagerty, Mr. Wisniewski's and Oswego View's claims of unlawful arrest and excessive force, and Counts IV and V. Persuaded by Judge Cleland's reasoning in *Berkemeier*, on which the Sixth Circuit relied when affirming his decision, the Court concludes that the Ordinance is not unconstitutional on its face, and Plaintiffs fail to show that it was applied to them unconstitutionally. Finally, Plaintiffs fail to present

23

evidence to show that Ms. Fox's arrest was unlawful or that excessive force was used against her.

Accordingly,

**IT IS ORDERED** that Defendants' summary judgment motion is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 28, 2025

24